ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>D T S ENTERPRISE, INC., a California corporation also known as and doing business as D T S CONCRETE; LESLIE DAIN SORG, an individual; SURETEC INSURANCE COMPANY, a Texas corporation; QUALITY DEVELOPMENT AND CONSTRUCTION, INC., a California corporation; DOE 1 THROUGH DOE 10, inclusive,<br><br>                    Defendants. | CASE NO.:<br><br>COMPLAINT FOR:<br><br>1. BREACH OF COLLECTIVE BARGAINING AGREEMENT;<br>2. FOR SPECIFIC PERFORMANCE COMPELLING AN AUDIT;<br>3. FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF;<br>4. FOR BREACH OF FIDUCIARY DUTY;<br>5. FOR RECOVERY AGAINST LICENSE BOND;<br>6. TO ENFORCE CLAIM FOR UNPAID BENEFITS DUE ON BEHALF OF EMPLOYEES<br><br>[29 U.S.C. §§ 185, 1109, 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185; 28 U.S.C. § 1367(a); Cal. Bus. & Prof. Code §§ 7071.10, 7071.11, Cal. Civil Code § 8024 Cal. Labor Code § 218.7] |

Plaintiff, CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN

CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability

company, ("Plaintiff") alleges:

–1–

**JURISDICTION AND VENUE**

1.     This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer, one of its officers, its license bond surety, the general contractor of the on whose project the employer performed work.  It is brought  to (a) enforce of the terms of collective bargaining agreements and plan trust agreements to recover fringe benefit contributions and related damages due by the employer on behalf of its employees (Claim 1); (b) compel the employer to produce records for audit to determine if additional amounts are due (Claim 2); (c) compel the employer to timely and fully report and pay monthly fringe benefit contributions (Claim 3); (d) recover against the employer and its officer for breach of fiduciary duty;  (e) enforce a claim against the employer's license bond pursuant to State Law, (Claim 5); (f) enforce a claim against the general contractor on the employer's project for a portion of the amounts due pursuant to State (Claim 6).   This Court has jurisdiction over Claims 1 through 4 pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  This Court has supplemental jurisdiction over Claims 5 and 6 pursuant to 28 U.S.C. § 1367(a) as all claims arise from a common core of transactions, and seek payment of overlapping damages.  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district as the employer's performance and breach took place in this district and the plans are administered in this district.

**PARTIES**

2.     Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company (CLTF) is a Delaware Limited Liability Company.  Plaintiff CLTF appears solely in its capacity as an administrator and agent for collection of

-2-

several employee benefit plans, and a fiduciary as to those plans, including the Laborers Health and Welfare Trust Fund for Southern California, Construction Laborers Pension Trust for Southern California, Southern California Gunite Workers Pension Fund; Construction Laborers Vacation Trust for Southern California, Laborers Training and Re-Training Trust Fund for Southern California,  Fund for Construction Industry Advancement,  Center for Contract Compliance, Laborers Contract Administration Trust Fund for Southern California, Laborers' Trusts Administrative Trust Fund for Southern California, and Southern California Partnership For Jobs  (collectively "TRUST FUNDS").   Each of the Trust Funds are express trusts, created by written agreements, are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and jointly-administered labor-management trusts under LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5).  CLTF's principal place of business is in, and the TRUST FUNDS are administered in, the County of Los Angeles, State of California.

    3.    Plaintiff is a fiduciary as to the TRUST FUNDS, in that it:

    A.    Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) fringe benefit contributions to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

    B.    Exercises authority or control respecting management or disposition of assets of the TRUST FUNDS, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those

–3–

assets among the different TRUST FUNDS, different participants, different time periods and different jobs.

4.      Plaintiff is informed and believes and thereon alleges that Defendant, D T S ENTERPRISE, INC., also known as and doing business as D T S CONCRETE ("EMPLOYER"), is a California corporation organized and existing under and by virtue of the laws of the State of California and is engaged in business in the State of California with its principal place of business in the City of Norco, County of Riverside, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

5.      Plaintiff is informed and believes and thereupon alleges that Defendant, LESLIE DAIN SORG ("SORG") is the Chief Executive Officer, Secretary and Chief Financial Officer of EMPLOYER and is engaged in business in the City of Norco, County of Riverside, State of California.

6.      Plaintiff is informed and believes and thereupon alleges that Defendant, SURETEC INSURANCE COMPANY ("SURETEC") is a Texas corporation, licensed and authorized to perform and transact a surety business in the State of California, with its principal place of business in the City of Houston, State of Texas.

7.      Plaintiff is informed and believes and thereon alleges that QUALITY DEVELOPMENT AND CONSTRUCTION, INC., is a California corporation ("QUALITY") organized and existing under and by virtue of the laws of the State of California with its principal place of business in the City of Irvine, County of Orange, State of California.

8.      The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as DOE 1 through DOE 10, inclusive are unknown to CLTF, who therefore sue said defendants by such fictitious names, and CLTF will amend this Complaint to show their true names and capacities when the same have been ascertained.

– 4 –

446428 . 1

## OTHERS

9.      The Southern California District Council of Laborers and its affiliated Local Unions, (collectively "UNION") is, and at all relevant times was, a labor organization representing employees affecting interstate commerce.  The UNION is not a party to this action.

10.     The persons listed on Exhibit "A" are or were employees of EMPLOYER who performed work on a project known as the "Manchester-Orangewood Affordable Family Housing Project" identified on said Exhibit and in the Sixth Claim for Relief of this complaint below, during the periods indicated therein. Said persons listed on Exhibit "A" shall be hereinafter referred to as "LABORERS". Each of the LABORERS is a "laborer" within the meaning of Cal. Civ. Code § 8024. The LABORERS are not parties to this action.

## INDIVIDUAL DEFENDANTS

11.     Plaintiff is informed and believes and thereon alleges that at all times material herein, that Defendants, SORG and or DOE 1 through DOE 5, inclusive, were and/or continue to be fiduciaries and/or parties in interest to the TRUST FUNDS as defined in 29 U.S.C. §§ 1002(14), and 1002(21)(A), for the reasons more fully described below and in the Fourth Claim for Relief.

12.     Plaintiff is informed and believes and thereon alleges that Defendants, SORG and/or DOE 1 through DOE 5, inclusive, during times periods where amounts are claimed against EMPLOYER were or still are jointly responsible for running the day to day operations of EMPLOYER and were and/or are responsible for decisions pertaining to the reporting and payment of contributions to the TRUST FUNDS, and that they personally maintained control of those funds which should have been turned over to the TRUST FUNDS.

13.     Plaintiff is informed and believes and thereon alleges that at all times herein, Defendants, SORG and/or DOE 1 through DOE 5, inclusive during times

periods where amounts are claimed against EMPLOYER, were or are the majority shareholders of EMPLOYER and beneficial owners of EMPLOYER.

14.     Plaintiff is informed and believes and thereon alleges that Defendants, SORG and/or DOE 1 through DOE 5, inclusive during times periods where amounts are claimed against EMPLOYER acted on behalf of and in the interest of EMPLOYER in all aspects of labor relations, dealings with employees, their assignment of work, and rates of compensation, in determining which employees EMPLOYER would report to the TRUST FUNDS, the number hours upon which contributions would be reported to the TRUST FUNDS and in dealings and relations with the TRUST FUNDS, and/or the UNION.

## AGREEMENTS

15.     In order to work and by working on projects covered by certain project labor agreements, EMPLOYER became bound to the following agreements:

(1) A Project Labor Agreement between the City of Los Angeles ("CITY") and the Los Angeles and Orange County Building and Construction Trades Council and the signatory trade Unions dated July 3, 2018 known as the City of Los Angeles Proposition HHH Project Labor Agreement ("City PLA"). On or about May 26, 2020 EMPLOYER executed a Letter of Assent for its work on the project covered by the City PLA known as Washington View Apartments ("Washington Project") located at 720 W. Washington Blvd., in the City of Los Angeles, State of California which binds EMPLOYER to certain terms of the UNON's Construction Master Labor Agreements including but not limited to the Southern California Master Labor Agreement (collectively "MLAs".)

(2) A Gunite/Shotcrete Commercial Agreement ("Gunite Agreement") executed by EMPLOYER with the UNION on or about August 27,

– 6 –

446428 . 1

2020, setting the terms and conditions of employment of certain of its employees for its work on the Washington Project performing work covered under the Gunite Agreement and which binds EMPLOYER to the terms of the UNION's MLAs.

(3) A Laborers Project Agreement ("Manchester PLA") entered into with the UNION executed on or about June 2, 2020 by EMPLOYER for its work on the Manchester-Orangewood Affordable Family Housing Project ("Manchester-Orangewood Project"). The Manchester PLA incorporates by reference the terms and conditions of the UNION'S MLAs for its work on the Manchester-Orangewood Project.

(4) The City PLA, Gunite Agreement and Manchester PLA will collectively be referred to as "Project Agreements."

16.     On or about April 2, 2021, EMPLOYER became fully signatory to written Collective Bargaining Agreements with the UNION, having executed a Laborers Short Form Agreement for the Construction Industry ("Short Form Agreement") with the UNION.  By virtue of the provisions of the Short Form Agreement, EMPLOYER became bound to the UNION'S MLAs on all construction projects within the geographical jurisdiction of the MLAs.

17.     Pursuant to the Project Agreements, Short Form Agreement, MLAs, EMPLOYER became obligated to all the terms and conditions of the various Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended ("Trust Agreements"). When referenced collectively hereinafter, the Project Agreements, the Short Form Agreement, MLAs and Trust Agreements are hereinafter referred to as "the Agreements."

18.     Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the TRUST FUNDS for all hours worked by (or paid for) their

employees who perform work covered by the Agreements ("Covered Work").

19.     Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit to the TRUST FUNDS, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports"). The TRUST FUNDS rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the TRUST FUNDS by employers and the credit toward fringe benefits to be allocated to their employees. The TRUST FUNDS depend on the truth and accuracy of this information, in order to not only determine the correct amount of Monthly Contributions due, but to fulfill their own fiduciary duties to properly credit participants towards the benefits provided by the TRUST FUNDS. Those Monthly Contributions constitute assets of the TRUST FUNDS, pursuant to the terms of the Agreements and applicable law, from the time they are due and can be reasonably segregated from other funds. The Trustees of the TRUST FUNDS have a fiduciary duty to marshal those assets so that they may be applied for the benefit of the participants and beneficiaries in accordance with the various Trust Agreements.

20.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the TRUST FUNDS. The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California. The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each of the TRUST FUNDS separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)). In addition, employers are

– 8 –

required to pay fees for the submission of dishonored checks.

21.    The failure of employers to pay Monthly Contributions when due causes damages to the TRUST FUNDS and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the TRUST FUNDS, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the TRUST FUNDS' ratio of collection costs over amounts collected, which are regularly reported to the TRUST FUNDS' trustees.

22.    The Project Agreements obligate EMPLOYER, and any of its subcontractors or lower-tiered subcontractors, to become bound to the Project Agreements for their work on the respective projects covered by the Project Agreements (Washington project and Manchester-Orangewood Project) and the Short Form Agreement and MLAs required EMPLOYER to subcontract work only to those subcontractors who are parties to an appropriate Labor Agreement with the UNION, and failure to do so will result in damages to the TRUST FUNDS and EMPLOYER will be financially obligated to the TRUST FUNDS for the damages caused therefrom, including amounts measured by the fringe benefit Monthly Contributions, liquidated damages, and interest that would be owed by the subcontractor if signatory to the Agreements.

23.    The Short Form Agreement, MLAs and Gunite Agreement further provide that if EMPLOYER subcontracts work to and/or if its subcontractor(s) or lower-tiered subcontractors, subcontracts work covered under the Agreements to any

– 9 –

subcontractor who is delinquent in its obligations to the TRUST FUNDS under its Agreements, then EMPLOYER will be financially obligated to the TRUST FUNDS for the amounts owed by said delinquent subcontractor, including any fringe benefits, liquidated damages and interest owed.

24.   The Agreements and ERISA provide the TRUST FUNDS with specific authority to examine and copy all of EMPLOYER'S payroll and business records which may be pertinent to determining whether EMPLOYER has abided by its reporting and payment obligations and compliance with the subcontracting provisions of the Agreements, has paid the appropriate Monthly Contributions to the TRUST FUNDS, and that the EMPLOYER shall be responsible for the costs of such audit. The TRUST FUNDS have delegated the authority to perform audits to Plaintiff.

25.   The Agreements require employers to pay the TRUST FUNDS' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

<u>PROJECT</u>

26.   Plaintiff is informed and believes, and on that basis alleges, the Anaheim House Authority, a public agency and Manchester Housing Partners, LP  ("Housing Partners") entered into a Ground Lease which provides for the development and operation of a multifamily apartment project for low income households, to plan, design, construct, develop and operate the Project known as the Manchester-Orangewood Affordable House Project ("Manchester-Orangewood Project") located at 915 E. Orangewood Avenue, Anaheim, California.

27.   Plaintiff is informed and believes that the Jamboree Housing Corporation, a California nonprofit public benefit corporation ("Jamboree") is the sole member and manager of JHC-Manchester, LLC., ("JHC") the managing general partner of the Housing Partners.  Plaintiff is informed and believes and thereupon

alleges that Housing Partners, JHC and/or Jamboree ("Jamboree Companies") contracted with QUALITY as the general contractor for the work of improvement on the Manchester-Orangewood Project.

28.     Plaintiff is informed and believes that QUALITY, as the "direct contractor" under Cal. Civ. Code § 8018, for the work of improvement on the Manchester-Orangewood Project, subcontracted certain portions of the work on the Manchester-Orangewood Project to EMPLOYER.

29.     As employees of EMPLOYER, each of the LABORERS performed construction labor work on the Manchester-Orangewood Project during the period June 2020 through October 2021, which was subject to the MANCHESTER PLA, the Short Form Agreement, MLA and Trust Agreements.  This labor was necessary for the construction, alteration or repair of buildings, improvements or structures upon the Manchester-Orangewood Project.

30.     The EMPLOYER failed to pay all the compensation due under the MANCHESTER PLA, the Short Form Agreement, MLA and Trust Agreements for the labor performed by LABORERS on the Manchester-Orangewood Project, including LABORERS' contributions payable to the TRUST FUNDS.

31.     Plaintiff is informed and believes, and on that basis alleges, that the Manchester-Orangewood Project is not yet complete.  Plaintiff has never been served nor have they found through diligent search, any Notice of Completion for the Manchester-Orangewood Project.

## FIRST CLAIM FOR RELIEF
### Against the EMPLOYER for Monetary Damages Due to Employee Benefit Plans
### [29 U.S.C. §§ 185, 1132(g)(2) and 1145]

32.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 31, above as if fully set forth here.

-11-

**BREACH OF AGREEMENTS**

33.     Plaintiff is informed and believes and based on such information and belief alleges that EMPLOYER employed workers who performed services covered by the Agreements and failed to pay the Monthly Contributions specified in the Agreements to TRUST FUNDS for each hour worked (or paid for) by employees performing services covered by the Agreements.  Due to EMPLOYER'S continuing obligation to submit timely accurate monthly contribution reports additional amounts may be discovered and become due and owing by EMPLOYER have not yet been ascertained at this time.  Said amounts including Monthly Contributions, liquidated damages, subcontracting violations, interest, and audit fees will be established by proof at the trial or other hearing.

34.     All conditions to EMPLOYER'S obligations to make payments under the Agreements have been met.

**DAMAGES**

35.     As a result of EMPLOYER's failure to pay the Monthly Contributions specified in the Agreements, Plaintiff is informed and believes and thereupon alleges that there is now owing and unpaid to the TRUST FUNDS from EMPLOYER, during time periods from Jun 2020 to  February 2022, damages in the sum of at least $526,152.95 consisting of $409,690.24  in unpaid Monthly Contributions, $101,132.62 in liquidated damages, $1,600.00 in audit fees, less a credit of $3,536.31 and $17,266.40 in interest on the late and/or unpaid Monthly Contributions owed to the TRUST FUNDS through May 13, 2022, plus additional accrued interest thereafter at the plan rate(s), currently 6.00% per annum, until payment of the Monthly Contribution is made, plus any additional Monthly Contributions, liquidated damages, subcontracting violations, audit fees and interest on the additional amounts owed at the plan rate(s), according to proof at the time of trial or other hearing.

36.     It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the Agreements which provide that in the event

-12-

446428.1

litigation is necessary with respect to any of the fringe benefit Monthly Contributions and/or damages against EMPLOYER, then EMPLOYER would pay reasonable attorney's fees and all other reasonable expenses of collection, including audit fees.

37.     Under Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent Monthly Contributions but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

## SECOND CLAIM FOR RELIEF
## OBLIGATION TO PRODUCE RECORDS FOR AUDIT
## (AGAINST EMPLOYER)

38.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 above as if fully set forth here.

39.     Plaintiff's claim herein is for specific performance of the Agreements.

40.     Pursuant to the Agreements and 29 U.S.C. § 1059(a)(1), the TRUST FUNDS have specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported and paid contributions on all hours worked by (or paid for) their employees who perform work covered under the Agreements, and whether they have otherwise abided by the payment obligations of the Agreements.

41.     Plaintiff requested that the EMPLOYER produce its books and records for a complete and updated audit.  The EMPLOYER has only partially complied with Plaintiff's audit and has refused to comply with Plaintiff's request to produced records to conclude the audit through June 30, 2021 and failed to produce records after June 2021 for audit by Plaintiff.  Plaintiff requests that the Court exercise its authority

under ERISA sections 502(a)(3) and (g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and (g)(2)(E) to order the EMPLOYER to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for Plaintiff to complete an audit to determine if additional amounts are due.

42.     Upon completion of the audit sought herein, Plaintiff will seek recovery of any delinquent contributions found due, as well as liquidated damages, audit costs, other damages, interest in addition to attorneys' fees and costs as provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

## THIRD CLAIM FOR RELIEF
### FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (AGAINST EMPLOYER)

43.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 42, inclusive as though fully set forth herein.

44.     The EMPLOYER has repeatedly failed to timely submit Monthly Reports and Monthly Contributions since May 2021, and has refused to produce records to conclude the audit through June 30, 2021 which disclosed substantial reporting violations, and EMPLOYER has refused to produce its payroll and business records to the TRUST FUNDS for an audit after June 30, 2021.

45.     By reason of the EMPLOYER's failure to comply with its Monthly Reporting and Contribution obligations, the TRUST FUNDS, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage for at least the following reasons.  First, the TRUST FUNDS must provide credit each month to participants and beneficiaries, including the EMPLOYER's employees, toward eligibility for fringe benefits (such as

446428 .1

health insurance and pensions) based on the number of hours they worked, which is determined from Monthly Reports.  Second, the amount of benefits payable to all participants and beneficiaries for health insurance and pension claims, including those employed by the EMPLOYER, is actuarially determined on the basis of funds projected to be received from contributing employers (including the EMPLOYER).  Third, health insurance is not provided to participants and beneficiaries, including the EMPLOYER's employees, after a certain period of non-payment of Monthly Contributions on their behalf.  Fourth, vacation pay, which is distributed by the Construction Laborers Vacation Trust for Southern California (one of the TRUST FUNDS), is not paid to employees, including the EMPLOYER's employees, for hours of work for which their employer has not submitted Monthly Contributions.  Fifth, the TRUST FUNDS have a legal obligation to take steps to collect amounts due by delinquent employers and thus the EMPLOYER's ongoing delinquency results in an ongoing drain on TRUST FUNDS' resources.  And, in addition, the failure of the EMPLOYER to itemize its work by identifiable projects undermines the TRUST FUNDS' ability to take steps to collect delinquent amounts through asserting project-specific claims, such as payment bond claims, stop payment notices and mechanics' liens.  Sixth, the TRUST FUNDS lose investment income on late-paid and unpaid Monthly Contributions.

46.    The TRUST FUNDS have no adequate or speedy remedy at law.  They therefore request that this Court exercise its authority under ERISA sections 502(a)(3) and (g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and (g)(2)(E), to issue preliminary and permanent injunctive relief ordering the EMPLOYER to comply with its obligations under the Agreements and ERISA section 515, 29 U.S.C. § 1145, to fully disclose its employees' Covered Work on its Monthly Reports, itemized by project, and timely submit them each month with full payment of the Monthly Contributions due.

47.    An award of attorneys' fees and costs is provided for by Agreements and under ERISA sections 502(g)(1) and/or (g)(2), 29 U.S.C. § 1132(g)(1) and/or (g)(2)).

-15-

446428.1

## FOURTH CLAIM FOR RELIEF

## DAMAGES FOR BREACH OF FIDUCIARY DUTIES

## IN VIOLATION OF ERISA

## (AGAINST EMPLOYER, SORG AND DOE 1 THROUGH DOE 5)

48.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 48 above.

49.     Plaintiff is informed and believes and thereon alleges that SORG and/or DOE 1 to DOE 5, inclusive, were and still are parties in interest, the agents, managing officers, directors, managing employees, and/or beneficial owners of EMPLOYER with the authority to direct, control, and/or manage the business affairs of EMPLOYER including the disposition of EMPLOYER's assets.

50.     Plaintiff is informed and believes and thereon allege that EMPLOYER, SORG and/or DOE 1 to DOE 5, inclusive, were and still are fiduciaries with respect to the TRUST FUNDS within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control respecting management or disposition of assets of the TRUST FUNDS.

51.     The Agreements require that EMPLOYER deduct Monthly Contributions due to the CONSTRUCTION LABORERS VACATION TRUST FUND FOR SOUTHERN CALIFORNIA ("VACATION FUND") from EMPLOYER's employees' weekly paychecks, in the amounts specified.  Such deductions are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which thus become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

52.     On "public works" as defined by California Labor Code § 1720, the EMPLOYER was required to pay a minimum "prevailing" or "per diem" wage,

including amounts which could either be paid directly on the weekly paycheck to employees, or contributed as "employer payments" (as defined in Labor Code § 1773.1) which includes payments to the TRUST FUNDS.  That portion of the required prevailing wage due such employees would be withheld from their per diem weekly wage and instead contributed to the TRUST FUNDS, in satisfaction of the prevailing wage required law.  The U.S. Department of Labor has taken the position that such amounts are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

53.     Plaintiff is informed and believes that, instead of turning over VACATION FUND contributions and the portions of the prevailing wage the EMPLOYER was required to be paid to the TRUST FUNDS from employees' weekly paychecks, that EMPLOYER, SORG and/or DOE 1 to DOE 5, inclusive, kept those amounts for their own use, and did not segregate or turn them over to the TRUST FUNDS.

54.     Plaintiff is informed and believes that if EMPLOYER performed work on projects that included public works projects on which prevailing wages were required to be paid to employees, and which required certified payroll records to be completed relating to the employees' work on the projects, under Labor Code § 1776, and SORG, and/or DOE 1 to DOE 5 inclusive were the responsible persons of EMPLOYER for the certification that such amounts would be paid to the TRUST FUNDS as part of the prevailing wage obligation.   Due to EMPLOYER's failure to produce job records for a complete audit, Plaintiff has not yet been able to ascertain all projects worked on by EMPLOYER.

55.     Plaintiff is further informed and believes that SORGE and/or DOE 1 to DOE 5, inclusive, had discretionary authority or control over sufficient, segregable

funds to pay the amounts that would be withheld from employees' weekly wages for contribution to the TRUST FUNDS including the authority to write checks on the accounts in which such funds were held, but instead kept them for his own use, or for the use of the EMPLOYER.

56.     By their discretionary authority or control over the management or disposition of assets of the TRUST FUNDS, EMPLOYER, SORG and/or DOE 1 to DOE 5, inclusive, are fiduciaries of the TRUST FUNDS within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

57.     Plaintiff is informed and believes and thereupon alleges that the amount of the delinquent VACATION FUND contributions referenced herein were and still are due and owing to the TRUST FUNDS and are assets of the TRUST FUNDS within the meaning 29 U.S.C. §§ 1001-1003, 1021-1031, 1111-1114 and 18 U.S.C. § 664 and that amount will be proven at the time of trial and/or other hearing.

58.     Plaintiff is informed and believes and thereupon alleges that by failing to timely account for and turn over the assets of the TRUST FUNDS described above, by failing to apply such assets for the exclusive benefit of participants and beneficiaries of the TRUST FUNDS, and instead using those assets for their own benefit, EMPLOYER,  SORG and/or DOE 1 to DOE 5, inclusive, breached their fiduciary duties to the TRUST FUNDS within the meaning of sections 404(a)(1)(A), (B) and (D), of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

59.     Plaintiff is informed and believes and thereon alleges that the acts and omissions to act by EMPLOYER, SORG and/or DOE 1 to DOE 5, inclusive, constitute misuse, misappropriation and/or conversion from employee benefit plans within the meaning of 18 U.S.C. § 664 and breach of their fiduciary obligations within the meaning of 29 U.S.C. § 1104 through §1106.

60.     Pursuant to § 409 of ERISA, 29 U.S.C. § 1109, SORG and/or DOE 1 to DOE 5, inclusive, and EMPLOYER are personally liable to make good to the TRUST FUNDS any losses to them resulting from each such breach of their fiduciary duties,

-18-

and to restore to the TRUST FUNDS any profits which have been made through their use of these assets of the TRUST FUNDS.  Plaintiff seeks an accounting from EMPLOYER, SORG and/or DOE 1 to DOE 5, inclusive, of the amount and disposition of these assets.

61.    Plaintiff requests that it be awarded its costs and reasonable attorney's fees pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), and such other remedies as may be available pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

## FIFTH CLAIM FOR RELIEF

**(Against SURETEC for Monetary Damages**
**Through Enforcement of License Bond)**

62.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 above as if fully set forth herein.

63.    Pursuant to various provisions of the California Business and Professions Code, including Business and Professions Code § 7071.5, EMPLOYER obtained from Defendant, SURETEC, bond number 462449 ("License Bond") and filed the License Bond with the Registrar of the California State Contractors License Board in the penal sum as required by statute and in favor of the State of California.

64.    TRUST FUNDS, as assignee of the various laborers' claims for recovery of the benefit portion of their wages, falls within the class or classes of claimants as set forth in California Business and Professions Code §§ 7071.5, 7071.11 and Civil Code § 8024(b), and is a beneficiary of the License Bond.

65.    The TRUST FUNDS are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the License Bond under California Business and Professions Code ("Business and Professions Code") §§ 7071.5(e), and 7071.11

66.     Plaintiff timely submitted a claim to SURETEC against the License Bond issued to EMPLOYER for Monthly Contributions.

67.     Pursuant to the terms of the LICENSE BOND, and provisions of California Business and Professions Code, SURETEC is responsible for paying up to the penal sum of said License Bond or at least $4,000.00 to the TRUST FUNDS for the unpaid Monthly Contributions owed on behalf of EMPLOYER's employees.

68.     The Agreements and ERISA provide for recovery of TRUST FUNDS' costs and attorney's fees; therefore, TRUST FUNDS are informed and believe that SURETEC is also responsible for payment of attorney's fees and costs incurred by the TRUST FUNDS.

### SIXTH CLAIM FOR RELIEF

**(Against QUALITY, AND DOE 6 TO DOE 10 to Enforce Liability for Unpaid Monthly Contributions)**

69.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 42 above as if fully set forth herein.

70.     The EMPLOYER employed LABORERS to perform work on the Manchester-Orangewood Project under its Manchester PLA, Short Form Agreement, MLA and Trust Agreements ("Manchester Agreements").  The compensation due to the LABORERS for their work includes Monthly Contributions payable to the TRUST FUNDS for all hours worked by the LABORERS on said Manchester-Orangewood Project at the contribution rates established by the Manchester Agreements.

71.     Plaintiff is informed and believes that QUALITY and DOE 6 to DOE 10, inclusive were issued a contract on the Manchester-Orangewood Project by one of more of the Jamboree Companies to perform and construct a work of improvement on the Manchester-Orangewood Project and is liable for any debt incurred by a

subcontractor to a wage claimant or third party on the wage claimant's behalf in the performance of work which is included in the subject contract between QUALITY and DOE 6 to DOE 10, inclusive and one or more of the Jamboree Companies pursuant to California Labor Code § 218.7(a).

72.     As a fiduciary to the TRUST FUNDS under ERISA, Plaintiff has standing under applicable law (ERISA §§ 502(a)(3) and 515, 29 U.S.C. § 1132(a)(3) and 1145) to maintain a direct action for the unpaid Monthly Contributions to the TRUST FUNDS included within the compensation for the labor of the LABORERS and thus has standing to assert a claim for such unpaid labor under Civil Code §§ 8024(c) and 8066, and Labor Code § 218.7(b)(2).

73.     EMPLOYER failed to pay the full compensation due on behalf of its LABORERS for labor on the Manchester-Orangewood Project in the form of Monthly Contributions payable to the TRUST FUNDS covering the period from June 2020 to October 2021 in the sum of $149,805.41 comprised of $142,658.84 in Monthly Contributions and $7,146.57 in interest at the plan rates through February 18, 2022 ("218.7 Claim") as set forth on Exhibit "1".

74.     Plaintiff sent by certified mail notice of the 218.7 Claim to QUALITY and JAMBOREE of the EMPLOYER'S failure to pay the Monthly Contributions due on behalf of the LABORERS to TRUST FUNDS.  The first notice was sent on February 3, 2021 with a demand for payment for $45,430.08 for unpaid Monthly Contribution and interest covering the period from August 2021 to October 2021.  The TRUST FUNDS thereafter discovered additional unpaid Monthly Contributions owed by the EMPLOYER on the Manchester-Orangewood Project and a second notice by certified mail was sent to QUALITY and JAMBOREE of the amended 218.7 Claim under California Labor Code § 218.7 by the TRUST FUNDS on February 18, 2021 with a demand for payment of $149,805.41 in unpaid Monthly Contributions and interest through February 18, 2021. Interest on the unpaid Monthly Contributions is provided for by California Labor Code § 218.7(a)(2) and continues to accrue at the

rates provided for by the Agreements and/or other law.

75.     EMPLOYER has failed to pay all compensation due the LABORERS under the Manchester Agreements for the labor performed on the Manchester-Orangewood Project and Plaintiff seeks to enforce QUALITY's and DOES' 6 to 10 inclusive, liability for payment of the Section 218.7 Claim pursuant to California Labor Code §§ 218.7(a) and 218(b)(2), including reasonable attorney's fees and costs provided for by California Labor Code § 218.7(b)(2), plus interest.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

**FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF**

1.     For the sum of $409,690.24, or according to proof, for delinquent fringe benefit Monthly Contributions pursuant to the Agreements and 29 U.S.C. § 1132(g)(2)(A);

2.     Interest on the delinquent Monthly Contributions, in the amount of $17,266.40 through May 13, 2022 plus additional accrued interest at the plan rate(s) and subject to proof, as required by the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(B),

3.     For liquidated damages in the sum of $101,132.62, or as subject to proof, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C);

4.     For a claim of $529,689.26 based upon the above less a credit of $3,536.3, plus additional amounts for Monthly Contributions, liquidated damages, subcontracting violations, audit fees and interest at the plan rate(s) according to proof at the time of trial or other hearing.

5.     For reasonable attorney fees and costs of suit as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D);

6.     For Plaintiff's costs of audit in the sum of $1,600.00 and subject to proof,

in accordance with the Agreements and 29 U.S.C. § 1132(g)(2)(E);

7.   For such other and further relief as the Court deems proper.

## FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF

1.   For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records, and  to fully cooperate with Plaintiff with respect to the audit in order for Plaintiff to determine the total amount due to the TRUST FUNDS by the EMPLOYER, and, specifically, to produce to Plaintiff the following payroll and business records – and any other records determined by Plaintiff to be necessary to conduct a full audit – for inspection, examination and copying:

   1.1.   For the period from June 1, 2020 to June 30, 2021, the following:

      A.   Payroll time cards; payroll time by job reports, certified payroll records;

      B.   Job Cost Reports on all projects from April 1, 2021;

      C.   Washington Project hours for the week ending June 26, 2021

      D.   Payroll registers, employee earning records for the week ending June 26, 2021.

      E.   Accounts payable register from June 1, 2020 to June 30, 2021, and vendor invoices as needed;

   1.2.   For the period from July 1, 2021 to the date of the audit:

      A.   EMPLOYER's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the EMPLOYER, its employees, its

–23–

446428 . 1

subcontractors, its lower-tier subcontractors and the employees of the EMPLOYER's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the EMPLOYER, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the EMPLOYER, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

B.  EMPLOYER's job files for each contract, project or job on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the EMPLOYER and any general contractor, subcontractor, owner, builder or developer, vendors, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other

-24-

records that relate to the supervision of the EMPLOYER's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

C.    EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

D.    EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

E.    All of the EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

F.    All collective bargaining agreements between the EMPLOYER and any trade union, and all records of contributions by the EMPLOYER to any trade union trust fund; and

1.3.    For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

446428.1

1.4.   For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF

1.   That this Court issue the following preliminary and permanent prohibitory and mandatory injunctions against EMPLOYER, and its managing officers, its agents, managing employees, successors, assigns, and all those in active concert or participation with EMPLOYER:

1.1.   That EMPLOYER be ordered to deliver the following, or cause to be delivered, to the TRUST FUNDS' offices no later than 4:30 p.m., on the 20th day of each month for the duration of the Agreements:

1.2.   A complete, truthful and accurate "Employers Monthly Report to Trustees" covering all employees which EMPLOYER employed who were covered by the Agreements commencing with EMPLOYER'S April 2022 reports;

1.3.   An affidavit or declaration from a responsible officer of EMPLOYER attesting from his or her own personal knowledge under pain of perjury to the completeness, truthfulness and accuracy of the Employers Monthly Report to the Trustees; and

1.4.   A cashier's check made payable to the Construction Laborers Trust Funds for Southern California for the full amount of the Monthly Contributions due on Employers Monthly Reports for each account for which a report is to be submitted.

2.   For reasonable attorney's fees;

-26-

446428.1

3.      For costs of suit herein; and

4.      For such other and further relief as the Court deems proper and just.

### FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF

1.      For unpaid Monthly Contributions according to proof, including but not limited to Monthly Contributions due to the VACATION FUND and Monthly Contributions due on public works projects owed on behalf of employees as well as other damages, and an accounting of all assets of the TRUST FUNDS which have not been turned over to the TRUST FUNDS, and any profits derived by the EMPLOYER SORG and DOE 1 through DOE 5;

2.      For personal liability of the EMPLOYER, SORG and DOE 1 through DOE 5, for their breaches of fiduciary duty, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a);

3.      For reasonable attorneys' fees and costs of suit pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

4.      For such other and further relief as the Court deems proper and just, pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

### FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF

1.      For up to the penal sum of the LICENSE BOND, or at least $4,000.00 plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions, providing the basis for the claim, became due.

2.      For reasonable attorneys' fees and costs.

3.      For such other relief that this Court deems appropriate.

///

446428.1

## **FOR PLAINTIFF'S SIXTH CLAIM FOR RELIEF**

1.      For the sum of $142,658.84 in unpaid Monthly Contributions plus amounts according to proof at the time of trial or other hearing;

2.      For interest at the rate(s) provided for in the Agreements in the sum of at least $7,146.84 plus additional accrued interest after February 18, 2022 at the plan rate(s)  or rates required by law, including California Labor Code § 218.6 and Cal. Civ. Code §§ 3287 and 3289 from the respective days the Monthly Contributions, providing the basis for the claim, became due;

3.      For reasonable attorneys' fees and costs.

4.      For such other relief that this Court deems appropriate.


DATED:  May 24, 2022                    REICH, ADELL & CVITAN
                                        A Professional Law Corporation


                                        By: /s/ Marsha M.  Hamasaki
                                            MARSHA M. HAMASAKI
                                            Attorneys for Plaintiff

446428.1